## WHITE vs. MASTIN.

[ACTION FOR VALUE OF MEDICAL SERVICES RENDERED.]

1. *Proof of medical license.*—Under section 975 of the Code, a medical license is competent evidence, without proof of the signatures attached to it.

2. *Proof of special contract with physician.*—In an action to recover for the value of medical services rendered by plaintiff to a third person, it is permissible for him to prove that, although he did not begin, he continued his services at the instance and request of the defendant; and, for this purpose, he may show that, when he spoke of discontinuing his visits, a telegraphic dispatch and a letter from defendant, requesting that all necessary attention be bestowed on the patient at his expense, were shown to him by the person who had received them, and who then requested him to continue his attendance.

3. *Same.*—In such case, defendant's dispatch being addressed to the infirmary at which the patient was confined, but authorizing the employment of persons not connected with the infirmary to perform necessary services for the patient, the fact that the defendant has paid the account contracted with the infirmary, which did not embrace the plaintiff's account, is irrelevant and inadmissible.

4. *Construction of special contract, evidenced by telegraphic dispatch.*—A telegraphic dispatch, sent by the defendant to an infirmary at which a patient is confined, in these words: " I have just learned of D.'s accident; show him every attention, and I will pay expenses "—authorizes the infirmary to procure for the patient any medical services that may be necessary, and obliges the defendant to pay the person by whom such services are rendered, although he may not be connected with the infirmary.

5. *Letter construed as authorizing employment of physician, and making writer liable as original promisor.*—Defendant having sent a telegraphic dispatch to an infirmary, requesting that all necessary attention might be bestowed, at his expense, on a patient therein confined by an accident; a letter, written by him two days afterwards, addressed to the person by whom his dispatch was answered, and containing these words, " May I not rely on your providing for D. as you or his attending physician may think best ",—confers on the person to whom it is addressed authority to employ, at the expense of the defendant, such physician as he might think best, and renders the defendant liable, as on an original promise, for the services rendered by such physician.

6. *Contract between physician and patient.*—There is nothing in the ordinary relation between a physician and his patient, which prevents him from discontinuing his services at the instance of the patient, and entering into a contract with another person for the payment of the charges for his future services; nor is the assent of the patient to such new contract necessary.

White v. Mastin.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. NAT. COOK.

THIS action was brought by Claudius H. Mastin, against
Clement B. White, to recover the value of services and
attention rendered and bestowed by the plaintiff, as a phy-
sician, at the special instance and request of the defendant,
to and upon one David Lumpkin; the amount of the ac-
count being $309. The defendant pleaded, "in short by
consent, the general issue, and the statute of frauds"; and
issue was joined on these pleas. On the trial, as appears
from the bill of exceptions, the plaintiff produced his li-
cense to practice as a physician, as required by written no-
tice on the part of the defendant. The defendant objected
to its admission as evidence, " because no sufficient proof
of its execution had been made." The court overruled the
objection, and the defendant excepted.

The material facts of the case, as disclosed by the evi-
dence, are these : Lumpkin was thrown from a buggy, in
the city of Mobile, in September, 1857, and severely in-
jured; and was carried to the "Providence Infirmary",
where he was immediately attended by the plaintiff and
another physician. On the 15th September, 1857, the de-
fendant, who lived in Selma, sent a telegraphic dispatch to
the infirmary, in these words : "I have just learned of
David Lumpkin's accident. Show him every attention,
and I will pay expenses. He is my cousin. Telegraph
how he is." The matron in charge of the infirmary, on
receiving this dispatch, sent it to one Batchelor, and re-
quested him to answer it; and Batchelor accordingly did
so. On the 17th September, 1857, the defendant wrote
and forwarded to Batchelor a letter, in these words : "I
received your dispatch yesterday, and regret that you speak
so discouragingly of David's recovery. I would go down
immediately and see him, were it not that, owing to the
sickness of my partner and clerks, I am entirely alone, and
heavy freights arriving. Should Mr. H. get well enough,
I will come down on the next boat. But, if I am disap-

pointed in so doing, may I not rely on your providing for David as you or his attending physician may think best. I dislike the idea of his being in an infirmary, but presume that, being alone in a large city, away from his relations, it is best. Will you please telegraph me every day of his condition; and if he should express any desire to have me come down, I will do so." The letter and dispatch were both shown by Batchelor to the plaintiff, who continued his attendance on Lumpkin, and afterwards amputated one of his legs.

The plaintiff read in evidence the deposition of Batchelor, whose answer to the second interrogatory was as follows: "Dr. C. H. Mastin attended Lumpkin. Doctors Fearn and Mastin first went to his aid, before any specific employment, to my knowledge, was made; from motives of humanity, it may be, until his friends could come to his relief. Dr. Fearn discontinued his services after the first examination. Dr. Mastin continued with him, and went out with him to the hospital, or infirmary, on the night of the accident. In a short time after the injury, the annexed dispatch, marked 'A', was received by the infirmary, and was immediately sent to me by the sisters of charity, to answer, at the request of Lumpkin, as will be seen by the note on the back of the dispatch. I immediately telegraphed to Mr. C. B. White, as requested, and received from him, in reply, the letter marked 'B'. I gave the letter and dispatch to Dr. Mastin, and it was in consequence of them that he continued his attendance on Lumpkin. It was after the receipt of the letter and dispatch that he performed the operation of amputating Lumpkin's leg, which was considered necessary to save his life. I am satisfied from the conversations I had with Dr. Mastin, that, if it had not been for the said letter and dispatch, he would have discontinued his attendance on Lumpkin, as the case was one requiring much care, attention and watchfulness; and he did not feel justified in continuing without some chance of compensation. Before the operation, and a short time after the injury, *Dr. Mastin spoke of discontinuing his*

*visits to Lumpkin ; but, on my handing him the letter and
dispatch of Mr. White, and understanding that he was able
to pay, continued his attendance, I requesting him to do so".*
The defendant objected to the admission of the italicized
portions of this answer, and reserved exceptions to the
overruling of his objections.

The defendant offered evidence showing that there was a
physician in the regular employment of the infirmary where
Lumpkin was confined, whose duty it was to attend on all
the patients ; also, a receipt showing that he had paid to
the infirmary, in June, 1858, the sum of $307, "in full
satisfaction of all claim of the Providence Infirmary for
attention rendered to David P. Lumpkin while confined as
an inmate thereof, and for expenses incurred for him." On
the plaintiff's motion, the court excluded the receipt, to-
gether with all the evidence relating to it ; to which ruling
the defendant excepted.

On the evidence adduced, all of which is set out in the
bill of exceptions, the defendant requested the court to
charge the jury as follows :

"1. That the telegraphic dispatch was only an under-
taking to pay the Providence Infirmary, and did not make
the defendant liable to a person who was outside of, and
had no connection with that institution.

"2. That the letter read in evidence does not impose a
liability on the defendant, in favor of the plaintiff in this
action, for services rendered to Lumpkin, unless the defend-
ant was notified that plaintiff had acceded to the pro-
posal in the letter, and was rendering services to him on
the faith of that proposal.

"3. That if plaintiff began his attention and services to
Lumpkin on the 9th September, and did not know anything
of the defendant until the 15th, and no letter or under-
taking by the defendant to pay for services, or any request
to render services, (?) and continued to render his services,
and gave his attention as he was doing before,—then Lump-
kin was liable for such services ; and if Lumpkin was lia-
ble, then the defendant was not liable.

"4. That if the plaintiff began his services as physician to Lumpkin on the 9th September, at the request of Lumpkin, and did not know anything of the defendant until the 15th September; and there was no second agreement or understanding between plaintiff and said Lumpkin, after the dispatch read in evidence, or after the letter, but the plaintiff continued his services just as he had done before, and until finally discontinued by him, then the defendant is not liable to him for such services".

The court refused each of these charges, and the defendant excepted to their refusal; and he now assigns as error the rulings of the court on the evidence, with the refusal of the charges asked.

WHITE & PORTIS, for appellant.
BYRD & MORGAN, contra.

A. J. WALKER, C. J.—1. The objection to the plaintiff's medical license was not well taken, and does not seem to be now insisted on. The Code (§ 975) made the license competent evidence, without proof of the signatures.

[2.] The plaintiff had been attending upon Lumpkin before the dispatch and letter from the defendant were shown to him. It was permissible for him to show that his services afterwards were rendered under the employment of the defendant. For that purpose, the parts of the answer of the witness Batchelor to the second interrogatory to which objection was made, were admissible. The witness, in saying that the plaintiff spoke of discontinuing his visits, does not give a conclusion from what was said, but states the substance of the declaration; and the declaration was admissible, because it was a part of the *res gestœ*. We think that the witness uses the word "understanding" in the sense of learning. The whole evidence objected to means nothing more than this. The plaintiff spoke of discontinuing his visits; the witness showed him the dispatch and letter; the plaintiff was told the defendant was able to

pay; and the witness requested him to continue his attend-
ance, and he did so. The evidence seems all to belong to
a transaction bearing directly, upon the material question
of the case, and was admissible. The objection, that the
dispatch and letter exhibited with the deposition of Batch-
elor were not identified by the commissioner, is not sus-
tained by the record.

[3.] The receipt of the Providence Infirmary, and the
evidence offered in connection with it, were properly ex-
cluded. The entire matter was irrelevant. It showed a
compliance on the part of the defendant with his contract
with the infirmary; but it could cast no light upon the
question, whether the defendant was the debtor of the
plaintiff. There was no proposition to show that the
plaintiff's debt was embraced in the account to which the
receipt pertained. Indeed, the contrary is shown by the
record.

[4.] The first charge requested, to the effect that the
telegraphic dispatch did not import an obligation to pay
any person unconnected with the infirmary, presented, as
we think, too narrow a view of that instrument. The
telegraphic dispatch requests the infirmary to show to Mr.
Lumpkin every attention, and proposes to pay expenses.
This proposition to pay expenses is accompanied with the
announcement, that the defendant had just learned of the
accident to Mr. Lumpkin, which made him a subject for
nursing as well as medical and surgical treatment. The
dispatch is, therefore, to be construed in reference to the
condition of Mr. L.; and we think it must be regarded as
authorizing the procurement by the infirmary, for the
wounded man, of whatever his situation made necessary,
although it might be supplied by a person not connected
with the infirmary, and as obligating the defendant to pay
the person furnishing the same. The charge was, there-
fore, properly refused.

[5.] In a letter written two days after the telegram, and
addressed to Batchelor, the defendant, after speaking upon
the subject of his going to Mobile, where Mr. Lumpkin

White v. Mastin.

was, said : "But, if disappointed in so doing, may I not rely upon your providing for David as you or his attending physician may think best." This letter, when considered in reference to the contents of the telegram, which had been handed to Batchelor, and by him answered, must be understood to confer authority upon Batchelor to secure the attendance of such physician as he thought "best," at the expense of the defendant. This letter was not a guaranty of such account as might be contracted for Lumpkin's benefit, nor was it an authority to Batchelor to guaranty such debt. It was an authority to Batchelor to act for the defendant in the procurement of necessaries ; and the defendant's liability upon the plaintiff's account was original. The law of guaranty has nothing to do with the case, and the second charge asked was properly refused.

[6.] Although the plaintiff may, at the outset, have rendered his services solely on Lumpkin's responsibility, he was not bound to continue his services in the same way. He had made no special contract, which would have been broken by the cessation of his services. There is nothing in the ordinary relation between a physician and his patient, which would prevent the former from discontinuing his services upon the account of the latter, and entering into a contract with another for the payment of the charges for his subsequent attendance. We perceive no reason why the assent of the patient to the making of such a contract should be necessary. There was, therefore, no error in the refusal of the third and fourth charges requested.

Affirmed.